IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED ENTERED
LODGED RECEIVED
AUG - 4 2014
AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

**TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, et al.**

Plaintiffs

v.

**IT&M DIVISION, INC.**

Defendant

Civil No. **PJM 12-3434**

**MEMORANDUM OPINION**

Plaintiffs Trustees of the National Automatic Sprinkler Industry Welfare Fund, Trustees of the National Automatic Sprinkler Local 669 UA Education Fund, Trustees of the National Automatic Sprinkler Industry Pension Fund, and Trustees of the Sprinkler Industry Supplemental Pension Fund ("NASI Funds" or "Funds") have sued IT&M Division, Inc. ("IT&M") to recover delinquent contributions and associated damages. Following oral argument, Plaintiffs' Motion for Summary Judgment (Dkt. 17) was granted as to liability and deferred as to damages. The Funds were directed to file a supplemental affidavit and interest and liquidated damages worksheets, which they have done. IT&M has filed an Opposition.

For the reasons that follow, Plaintiffs' Motion for Summary Judgment will be **GRANTED** in the total amount of $151,902.27 in contributions, liquidated damages and interest, and $29,893.85 in attorneys' fees and costs.[1]

[1] The Court notes that the NASI Funds appear to have misstated the sum of its requested damages in their proposed Order. The proposed Order (Dkt. 32-5) lists the sum as $201,465.67, whereas the requested damages actually total $181,796.12. The Court assumes the lower figure correctly states what the Funds seek.

**I.**

The NASI Funds are employee benefit plans organized under the provisions of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. On March 28, 2007 and April 1, 2010 IT&M executed Assent and Interim Agreements, agreeing to be bound by the collective bargaining agreement ("CBA") between Local 669 and the National Fire Sprinkler Association. By the Asset and Interim Agreements, IT&M also agreed to be bound by the Declarations of Trust ("Trust Agreements") governing each of the NASI Funds. The CBAs bind IT&M to the Trustees' Guidelines for Participation in the NASI Funds ("Guidelines").

Under the CBA, Trust Agreements, and Guidelines, IT&M was required to make monthly contributions to the Funds at a rate prescribed by the CBA for each hour worked by a covered employee. IT&M was also obligated to submit monthly reports to the Funds indicating the names of the employees who performed the work and the hours they worked. Contributions and reports were due by the 15th day following the end of each calendar month. Under the Trust Agreements and Guidelines, IT&M was obligated to pay liquidated damages and interest on any late contributions.

The Funds designated Salter & Company, LLC as their representative to conduct an audit of IT&M's payroll records and tax statements for the period January 2009 through June 30, 2012. Salter concluded the audit on August 3, 2012.[2] The Funds base a number of their claims on the results of the audit. The Funds have also claimed untimely contributions by IT&M for the period of November 2010 through July 2011, based upon monthly reports submitted by IT&M.

---

[2] Records examined included Employers Quarterly Withholding Reports (Form 941); Quarterly State Unemployment Returns; Form 1099-MISC; Form 1096 Annual Summary and Transmittal of U.S. Information Returns; W-2 Wage and Tax Statements; Yearly Payroll Records – Quickbooks payroll summary reports; Cash Disbursement Journal. Audit Report, Supp. Eger Decl. Ex. L.

Additionally, the Funds have calculated unpaid contributions owed for the period of July 2012 through March 31, 2013 based on spreadsheets submitted by IT&M to the Court in IT&M's first Opposition to Plaintiffs' Motion for Summary Judgment. Finally, the Funds have calculated and claim appropriate interest as well as liquidated damages on all sums sought and have submitted a supplemental declaration in support of those calculations.

Revisiting the Funds' Motion for Summary Judgment, the Court considers the supplemental declaration filed by the Funds and IT&M's opposing affidavit.

The Funds seek damages for three time periods.

A. November 2010 – July 2011

In this period, the Funds received contributions but claim they were received late. Accordingly, they seek interest ($666.28) and liquidated damages ($6,424.24) for those untimely contributions for this period. Since IT&M does not specifically dispute these calculations, the Court will **GRANT** the Funds summary judgment as to this portion of their claim.

B. January 1, 2009 – June 30, 2012

The Funds received some contributions—timely and untimely[3]—during this period, and make no claim for those contributions. However, the Funds claim that their audit revealed that additional non-duplicative contributions were owed for the same period. Specifically, the audit revealed that additional contributions had not been paid in the amount of $59,575.01. The Funds claim that amount plus interest ($8,833.42) plus liquidated damages ($11,915.01) as to those unpaid contributions. IT&M disputes the number of hours the Funds say were worked and

[3] In Case No. 8:10-cv-01612-RWT, the Funds obtained a judgment against IT&M for the period of July 2007 through November 2010. The NASI Funds' Motion for Default Judgment in that case indicates that the Funds received late contributions for the months of February 2009 through June 2009, August 2009 through December 2009, and February 2010 through July 2010. IT&M failed to make contributions to the Funds for the months of August 2010 through November 2010. The Funds made no claim for contributions for the months of January 2009, July 2009, or January 2010. In the present pleadings, IT&M indicates that from November 2010 through July 2011, the Funds received a total of $32,121.8 in untimely contributions. *See* Suppl. Eger Decl., Ex. J. (remittance summaries showing when reports and contributions were received).

therefore the contributions purportedly owed. IT&M also argues that damages claimed for August 2011 through November 2011 are duplicative of an earlier judgment.

C. July 1, 2012 – March 31, 2013

Unquestionably, IT&M ceased providing reports or contributions to the Funds after June 2012,[4] which led the Welfare Fund to terminate IT&M's participation in that Fund effective June 30, 2012. IT&M therefore claims that contributions allegedly owed to the Welfare Fund should be deducted for this entire period because no health insurance benefits were provided to IT&M employees when the Fund terminated. The Funds reply that the CBA that bound IT&M did not expire until March 31, 2013; hence contributions to all Funds remained due and owing until March 31, 2013. The Funds seek $49,539.01 in contributions, plus interest ($5,041.50) plus liquidated damages ($9,907.80) for this period.

D. Costs and Fees

Finally, the Funds also seek to recover the cost of the audit ($1,645.10), attorneys' fees ($27,703.75) and costs ($545.00). IT&M has not opposed this request.

**II.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine dispute is one where the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A material fact is one "that might affect the outcome of the suit under governing law." *Erwin v. United States*, 591 F.3d 313, 320 (4th Cir. 2010) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When assessing a motion for

[4] IT&M asserts that it ceased making Fund contributions beginning in December 2011, while the NASI Funds state that contributions ceased as of June 2012.

summary judgment, the court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in his or her favor. *Dulaney*, 673 F.3d at 330. A nonmoving party may not, however, defeat summary judgment by making assertions lacking sufficient factual support or by relying on a mere "scintilla of evidence." *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009). A party opposing a properly supported motion for summary judgment bears the burden of establishing a genuine issue of material fact on each essential element of its case. *Anderson*, 477 U.S. at 248-49; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).

"Where a benefit fund has conducted an audit and no other barriers to liability or damages exist, judgment is appropriate, absent some specific challenge to the audit's findings." *Maryland Elec. Indus. Health Fund v. MESCO, Inc.*, 2014 WL 853237, at *14 (D. Md. Feb. 28, 2014). As Judge Williams of this District has explained:

> Neither the Fourth Circuit nor its district courts have addressed the specific standard of review for a summary judgment motion where an employer that is required to contribute to a multiemployer pension plan challenges the plan's audit findings. However, other courts have held that judgment as a matter of law is appropriate where the plan presents an audit demonstrating that contributions are owed and the employer fails to identify specific errors in the audit or provide documentation to rebut the audit's conclusions.

*Nat'l Elec. Ben. Fund v. Rabey Elec. Co., Inc.*, 2012 WL 3854932, at *4 (D. Md. Sept. 4, 2012) (citing *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695–97 (6th Cir. 1994); *Trustees of Plumbers & Steamfitters Local Union No. 43 v. Crawford*, 573 F.

Supp. 2d 1023, 1036–38 (E.D. Tenn. 2008); *Durso v. Cappy's Food Emporium, Ltd.*, 2006 WL 3725546, at *1–2 (E.D.N.Y. Dec. 14, 2006)).

**III.**

**A.**

January 1, 2009 – June 30, 2012

IT&M for some reason states that it is "undisputed" that it owed no contributions for the period January 1, 2009 through November 2011,[5] despite the fact that the Funds' audit found additional contributions were due and owing. IT&M has not demonstrated the impropriety or inaccuracy of the Funds' claim through such evidence as cancelled checks.

As for the period December 2011 through June 30, 2012, IT&M concedes that $24,894.51 in contributions is due for this period,[6] but disputes that the $59,575.01 the Funds seek is due. IT&M supports its argument by disputing the number of employees performing covered work and the number of hours worked by them for this period, as disclosed by the audit. IT&M also asserts, as to the period August 2011 through November 2011, that the contributions claimed are duplicative of an earlier judgment, so that any judgment awarded for this period should be reduced by $45,173.12.

As stated above, an employer must "identify specific errors in the audit or provide documentation to rebut the audit's conclusions", *Nat'l Elec. Ben. Fund*, 2012 WL 3854932, at *4. This IT&M has not done. It is not enough for IT&M to oppose an audit simply by declaring that its own un-audited numbers should be accepted as evidence or merely by asserting in general

[5] IT&M's Memorandum states that "[u]p to and including December of 2011, it is undisputed that no contributions are owed by the Company" but this is not supported by the Briceno affidavit, which calculates payroll liabilities of $57.45 for December 2011 in Ex. C to the affidavit. *See also* Briceno Aff. ¶2 (IT&M "stopped making Fund contributions after the contributions were made for November 2011. Up until that point we were completely current, and did not owe any contributions to the Funds.").

[6] *See* Briceno Aff. Ex. C. (adding payroll liabilities for December 2011 through June 2012 = $24,984.51).

terms that certain damages are duplicative of an earlier judgment. Clear supportive evidence must be adduced.

In view of the foregoing, the Funds are entitled to summary judgment as to this time period as well.

**B.**

July 1, 2012 – March 31, 2013

The Funds seek $49,539.01 in unpaid contributions for this period, relying on spreadsheets IT&M filed with the Court. For this period the Funds have relied on IT&M's own documents showing that four of its employees worked 2,829.25 hours in covered employment between July 2012 and March 2013. IT&M asserts that "when accurate calculations are performed" the "true" amount of unpaid contributions is $48,244.05, which should be further reduced by contributions owed to the NASI Welfare Fund for this period ($22,631.81). The Funds reply that IT&M has not explained or illustrated the formula by which its numbers were arrived at, and that IT&M's unsubstantiated calculations are clearly contradicted by evidence in the record.[7]

The Funds have submitted a table showing, for each of IT&M's four employees, the hours each worked, the applicable contribution rate for each, and the total contributions due and owing for each to each Fund for each month. *See* Suppl. Eger Decl., Ex. P. IT&M has not shown how it calculated the contributions it says are due and owing, much less has it demonstrated that the rates used by the Funds were incorrect. In other words, IT&M has failed

[7] Some of IT&M's own calculations do not compute. For example, pursuant to the CBA, IT&M was required to pay the NASI Pension Fund $5.35 per hour worked by each employee. IT&M represents that employee Bushnell worked 7 hours in January 2012. Therefore the correct amount owed to the NASI Pension Fund for Bushnell for January 2012 should be listed as $37.45, not the $36.85 listed by IT&M.

to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 525 (quoting Fed. R. Civ. P. 56(e)).

IT&M's contention that it owes no contributions to the Welfare Fund after IT&M's participation was terminated is similarly unavailing. The CBA to which IT&M was bound expressly states that termination "will stop the accrual of any benefits but will not affect any action to enforce the Collective Bargaining Agreement or to collect contributions and liquidated damages due the Funds." Guidelines, Supp. Eger Decl. Ex. I at 5. In any event, IT&M employees were in fact eligible to receive credit for hours worked for IT&M after June 30, 2012 when contributions might be received from IT&M, and any claims incurred during this period by an otherwise eligible employee would have been paid. Jacobson Decl. ¶4. The Court previously rejected IT&M's argument that it somehow was legally entitled to disavow the CBAs after June 2012. The Court found IT&M liable for contributions up to and including March 31, 2013 to all the NASI Funds once before, and it does so again now.

IV.

Summary judgment, then, will be **ENTERED** in favor of the NASI Funds and against IT&M, calculated as follows:

A. November 2010 – July 2011

| Contributions | Liquidated Damages | Interest | Total |
|---|---|---|---|
| None | $6,424.24 | $666.28 | **$7,090.52** |

B. January 1, 2009 – June 30, 2012

| Contributions | Liquidated Damages | Interest | Total |
|---|---|---|---|
| $59,575.01 | $11,915.01 | $8,833.42 | **$80,323.44** |

C. July 1, 2012 – March 31, 2013

| Contributions | Liquidated Damages | Interest | Total |
|---|---|---|---|
| $49,539.01 | $9,907.80 | $5,041.50 | **$64,488.31** |

D. Total

| Contributions | Liquidated Damages | Interest | Total |
|---|---|---|---|
| $109,114.02 | $28,247.05 | $14,541.20 | **$151,902.27** |

E. Costs and Fees

| Attorneys' Fees | Costs | Cost of Audit | Total |
|---|---|---|---|
| $27,703.75 | $545.00 | $1,645.10 | **$29,893.85** |

A separate Order will **ISSUE**.

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**August 4, 2014**